HEWIT PHARMACIES, INC., Appellant, *v.* ÆTNA LIFE INSURANCE COMPANY, Respondent.

(Argued February 28, 1935; decided April 16, 1935.)

*Thomas J. Mangan* for appellant.

*David F. Lee* for respondent.

CRANE, Ch. J.   On or about April 28, 1930, the defend-
ant issued to the plaintiff, Hewit Pharmacies, Inc.,
a druggist's policy of insurance.   It provided:

"In Consideration of the premium herein provided, the Ætna Life Insurance Company of Hartford, Connecticut (called the Company)

DOES HEREBY AGREE TO INDEMNIFY

The Assured described in the Representations hereof, within the amounts as expressed herein, Against Loss and/or Expense Arising or Resulting Directly from Claims upon the Assured for Damages on account of bodily injuries and/or death accidentally suffered or alleged to have been suffered by any person or persons in consequence of any error or mistake, made or alleged to have been made during the policy period, provided herein in preparing, compounding, dispensing, selling or delivering at or from the premises described in said Representations, any of the drugs, medicines or merchandise customarily kept for sale in drug stores, save and except claims arising by reason of:

"(1) Injuries and/or death which shall be shown to have been caused by any person employed in violation of law, or caused by a failure to comply with any statute or local ordinance or in consequence of the performance of any unlawful act by the Assured or any employee of the Assured."

The plaintiff operates a chain of retail drug stores in the various cities set forth in the representations in the policy. It also conducts a wholesale drug business under the assumed name and style of Binghamton Wholesale Drug Company. The policy only covered the retail drug store, and the wholesale business was not included. At its Water street store in the city of Binghamton the plaintiff carried on a retail and wholesale drug business in the same place, the front being used for the retail, and the rear for the wholesale trade.

Section 1743 of the Penal Law and section 1360 of the Education Law (Cons. Laws, ch. 16) provide that it is unlawful for any person to sell at retail or furnish any of the poisons of Schedules A and B without affixing or

causing to be affixed to the bottle or package a label with the name of the article and the word " poison " distinctly shown, with the name and place of business of the seller, all printed in red ink, together with the name of such poison printed or written thereupon in plain, legible characters. The said statutes also provide that no person shall deliver any of the poisons of Schedules A or B until he has satisfied himself that the purchaser is aware of its poisonous character and that the poison is to be used for a legitimate purpose. Oil of tansy is one of the poisons enumerated in Schedule B.

Joseph Lynn, Jr., on the afternoon of June 27, 1930, came to the plaintiff's retail drug store to purchase two ounces of the oil of tansy. Through a mistake of an employee, in believing the purchase to be made at wholesale instead of at retail, the bottle was not marked in accordance with these sections of the Penal Law and the Education Law, nor were the other provisions complied with. That evening Anna V. Lynn, the wife of Joseph, drank about an ounce of said tansy as a medicine, and died almost immediately. Oil of tansy taken in a small amount, from one to eight drops, is harmless. An ounce is four hundred and eighty drops and is fatal.

Action was brought by Lynn against the Hewit Pharmacies, Inc., and settled for a very reasonable amount. This action has been commenced by the insured to recover this loss under the policy mentioned. The defense is that the act of the employee comes within the exception, which reads as given above, " save and except claims arising by reason of  *  *  *  or in consequence of the performance of any unlawful act by the Assured or any employee of the Assured."

We agree with the courts below, that the giving of this bottle of tansy without the poison label was an unlawful act, committed by an employee of the assured, and comes directly within the exception. Look at it as we will, we find no escape from this conclusion. That the failure

to put the label on the bottle was a mistake, which at most amounted to negligence, is no defense to a violation of the provisions of law mentioned.

What this policy does cover has been difficult for us to determine. The provisions of the Penal Law are so very broad and sweeping that almost every act of negligence resulting in the sale of a drug wrongly marked or of a different article than that called for is an unlawful act. Section 1742 reads: " Omitting to label drugs, or labeling them wrongly. Any person, who, in putting up any drug, medicine, or food or preparation used in medical practice, or making up any prescription, or filling any order for drugs, medicines, food or preparation puts any untrue label, stamp or other designation of contents upon any box, bottle or other package containing a drug, medicine, food or preparation used in medical practice, or substitutes or dispenses a different article for or in lieu of any article prescribed, ordered, or demanded, or puts up a greater or less quantity of any ingredient specified in any such prescription, order or demand than that prescribed, ordered, or demanded, or otherwise deviates from the terms of the prescription, order, or demand by substituting one drug for another, is guilty of a misdemeanor; provided, however, that, except in the case of physicians' prescriptions, nothing herein contained shall be deemed or construed to prevent or impair or in any manner affect the right of an apothecary, druggist, pharmacist or other person to recommend the purchase of an article other than that ordered, required or demanded, but of a similar nature, or to sell such other article in place or in lieu of an article ordered, required or demanded, with the knowledge and consent of the purchaser."

The Hewit Pharmacies, Inc., assumed that this policy covered, as it stated, any loss occasioned in consequence of any error or mistake in preparing, compounding, dispensing and selling any drug or medicine customarily

kept for sale in drug stores. This agreement to indemnify for such a loss was in fact meaningless. As far as we can see, it had no effect; it covered no such act as was stated, because the exception nullified it; what the insurance company gave with one hand it took away with the other; it received its premium without providing the security. The exception excluded from the coverage the performance of any unlawful act, and the Penal Law makes any mistake, or error in selling a drug, a misdemeanor. Dispensing a different article for or in lieu of the article prescribed or demanded, or putting up a greater or less quantity of any ingredient than that prescribed, or deviating from the terms of the prescription or order by substituting another drug, seems broad enough to cover any mistake made in selling drugs.

We mention these matters not in the way of criticism or reflection upon the defendant insurance company. Their policy no doubt was framed to cover other States where the Penal Law may not be so rigid. We refer to these matters in order that the law may be so amended as to afford better protection under casualty insurance policies.

The judgment appealed from should be affirmed, with costs.

LEHMAN, O'BRIEN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur.

Judgment affirmed.